## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANTHONY C. SMITH,  )
    Plaintiff,  )
      )
v.  )  CIVIL ACTION NO. 1:17-00516-N
      )
NANCY A. BERRYHILL, *Acting*  )
*Commissioner of Social Security*,  )
    Defendant.  )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Anthony C. Smith brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. Upon consideration of the parties' briefs (Docs. 13, 20) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 25, 27).

# I.    *Background*

On October 22, 2014, Smith filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning October 23, 2009.[2]  After his applications were initially denied, Smith requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on March 26, 2015. On February 7, 2017, the ALJ issued an unfavorable decision on Smith's applications, finding him not disabled under the Social Security Act and thus not entitled to benefits.  (*See* R. 84 – 108).

The Commissioner's decision on Smith's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on October 27, 2017.  (R. 1 – 6). Smith subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of

---

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703

F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and "'[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…'" *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in

substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar

---

appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),
1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015)

(per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential
> evaluation process used to determine whether a claimant is
> disabled: (1) whether the claimant is currently engaged in
> substantial gainful activity; (2) whether the claimant has a severe
> impairment or combination of impairments; (3) whether the
> impairment meets or equals the severity of the specified
> impairments in the Listing of Impairments; (4) based on a residual
> functional capacity ("RFC") assessment, whether the claimant can
> perform any of his or her past relevant work despite the
> impairment; and (5) whether there are significant numbers of jobs
> in the national economy that the claimant can perform given the
> claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v),

416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to

demonstrate both a qualifying disability and an inability to perform past

relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d

1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has

satisfied this initial burden, the examiner must consider four factors: (1)

objective medical facts or clinical findings; (2) the diagnoses of examining

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but
they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v.
Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases
printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing
individual steps of this five-step sequential evaluation.

physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and

explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Smith met the applicable insured status requirements through December 31, 2014, and that he had not engaged in substantial gainful activity since October 23, 2009, the alleged disability onset date. (R. 89 – 90). At Step Two, the ALJ determined that Smith had the following severe impairments: major depressive disorder, anxiety, posttraumatic stress disorder, and history of cannabis and alcohol abuse. (R. 90 – 91). At Step Three, the ALJ found that Smith did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 91 – 93).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Smith had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[6] except that he could have no exposure to unprotected heights or hazardous machinery; no operating motor

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

vehicles; can perform simple, routine tasks in 2 hour increments with normal breaks for the duration of an 8 hour workday; occasional change in the routine work setting; occasional interaction with the public; and can work in close proximity to others, but must work independently, not in a team. However, on a frequent basis (defined as up to 2/3 of the day), [Smith] would be unable to complete [his] job duties in a timely manner." (R. 93 – 103).

Based on this RFC and the testimony of a vocational expert, the ALJ determined that Smith was unable to perform any past relevant work. (R. 103). At Step Five, based on additional testimony from the vocational expert, the ALJ found that there were no jobs existing in significant numbers in the national economy that Smith could perform given his RFC, age, education, and work experience. (R. 103 – 104.). However, at a subsequent step the Court will hereinafter refer to as "the Substance Use Step," the ALJ found that Smith's substance abuse disorder was a contributing factor material to the determination of disability because Smith would not be disabled if he stopped the substance use.[7] (R. 104 – 108). Thus, the ALJ found that Smith was not

---

[7]

In the C[ontract with America Advancement Act of 1996], Congress amended the Social Security Act to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104–121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)). The regulations implementing § 423(d)(2)(C) provide that once

disabled.  (R. 108).

## IV.   *Analysis*

Smith claims that the ALJ was wrong to assign no weight to the medical opinion of Smith's treating psychiatrist, Dr. Gregory Cummings,[8] while assigning great weight to the medical opinion of a non-examining medical expert, psychologist Dr. John Davis.[9]  The undersigned disagrees.

---

the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether ... drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

*Doughty*, 245 F.3d at 1278–79.

[8] "A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502).

[9] Medical experts (MEs) "are physicians, mental health professionals, and other medical professionals who provide impartial expert opinion at the hearing level on claims under title II and title XVI of the Social Security Act. []MEs provide opinions by either testifying at a hearing or responding to written interrogatories…The primary reason an ALJ will request an ME opinion is to help the ALJ evaluate the medical evidence in a case."  HALLEX I-2-5-32(A)-(B).  "An ME's opinion is not binding on an ALJ[,]" who must evaluate it like any other medical opinion.  *Id.* I-2-5-32(B).  Under SSA policy, MEs are not permitted to examine claimants before rendering their opinions.  *See* HALLEX I-2-5-34(A) ("An ALJ will never ask or permit an ME to perform an examination of a claimant. If an ALJ finds an examination is necessary because there is not enough evidence about an

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations

---

impairment(s) for the ALJ to make a finding, the ALJ will request a consultative examination."). Therefore, their opinions are appropriately treated as those of non-examining medical professionals.

and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Id.* (quoting *Lewis*, 125 F.3d at 1440). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g., Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.").

It is true that "[t]he opinions of nonexamining, reviewing physicians,…when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). As such, "[t]he good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the

treating physician." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz*, 825 F.2d at 280. Thus, "[i]f an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record." *Ethridge v. Berryhill*, No. 1:16CV788-WC, 2017 WL 4780619, at *5 (M.D. Ala. Oct. 23, 2017) (Capel, M.J.) (citing cases).[10]  *See also*

---

[10] *Compare Sharfarz*, 825 F.2d at 280-81 ("As we have observed, the only medical opinions that support the finding that appellant can do medium work are those of the nonexamining, nontreating physicians. The opinions of all of the treating and examining physicians support the contrary finding. The ALJ provided no cause for not according those latter opinions substantial or considerable weight. Thus, his finding that appellant could return to his prior work was not supported by substantial evidence. The case must be remanded to enable the Secretary to reevaluate the medical evidence in accordance with the law."), *with Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (unpublished) ("[T]here is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians…[Thus], the ALJ did not err by giving more credence to Goren's conclusions than to those of Vernacchio and Kantor."); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872-74 (11th Cir. 2011) (per curiam) (unpublished) (holding that ALJ did not err in crediting the opinions of non-examining physicians where their opinions were supported by the record and good cause existed for giving little weight to the treating physician's opinion); *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. 2011) (per curiam) (unpublished) ("[B]ecause the ALJ articulated good cause for discounting the opinions of Flowers's treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's [sic] own clinical findings, the ALJ did not err in giving more weight to the consulting doctor's opinion."); *and Osborn v. Barnhart*, 194 F. App'x 654, 668 (11th Cir. 2006) (per curiam) (unpublished) ("Osborn's medical records reveal only diagnoses, not reasoned and medically-supported opinions detailing Osborn's work limitations or limited functions, and, therefore, substantial evidence supported the ALJ's decision to give minimal weight to [the treating physician]'s opinion and more weight to the state agency's evaluation.").

Social Security Ruling 96-6P, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s medical opinion if the State agency medical or phychological [sic] consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."). Accordingly, Smith is incorrect that an ALJ can never properly give greater weight to the opinion of a non-examining physician than that of a treating physician.

Moreover, at both Step Four and the Substance Use Step,[11] the ALJ thoroughly explained her reasons for giving no weight to Dr. Cummings's opinion and great weight to Dr. Davis's. These stated reasons were not substantively addressed in Smith's brief or at oral argument. At most, Smith's brief cites two pages of medical records in disputing the conclusions the ALJ drew from evidence that Smith's alcohol abuse was in remission. (Doc. 13 at 4 (citing R. 692, 694)). In particular, Smith highlights a July 12, 2016 treatment note by Dr. Cummings

---

[11] The undersigned notes that any alleged error in evaluating the medical opinion evidence at Steps One through Five would be harmless, given that the ALJ made an initial determination of disabled at Step Five before proceeding to the Substance Use Step.

stating that Smith's alcohol abuse was in "partial remission" and that Smith reported that he was "doing alright," but also documenting Smith's subjective complaints that "he still struggles with intermittent nightmares and flashbacks from the convoy explosion that he experienced in Iraq." (Doc. 13 at 4 (citing R. 694)).

However, the ALJ expressly discussed this evidence in her decision (*see* R. 99, 105), concluding that "if [Smith] stopped the substance use, [his] medically determinable impairments could reasonably be expected to produce some of the alleged symptoms[,]" but that "[t]he objective exam findings and [Smith]'s report of his activities during this period of remission show a significant improvement in his condition when substance abuse is not a factor." (R. 105). The ALJ then proceeded to discuss Smith's longitudinal history of substance use prior to stating that she gave Dr. Cummings's opinion "little weight" because, *inter alia*, it was "not consistent with the record as a whole…" (R. 105 – 106). The fact that Smith can point to a single notation in the record that could be interpreted as not supporting the ALJ's determination does not render the ALJ's determination erroneous for purposes of judicial review. *See Ingram*, 496 F.3d at 1260 ("Even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision reached is supported by substantial evidence." (quotation omitted).

Moreover, the ALJ expressly considered the very evidence that Smith cites in support of his claim that the ALJ erred, and Smith's bare assertions that the

ALJ should have drawn a different conclusion from that evidence amount to an invitation for the Court to impermissibly "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation omitted). *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").[12]

Because Smith has failed to show that the ALJ committed any reversible

---

[12]     Smith also argues that the ALJ should not have given great weight to Dr. Davis's opinion because it "referenced only Exhibits 2F and 3F and did not appear to take into consideration later treatment records." (Doc. 13 at 3). Smith is correct that Dr. Davis's opinion only specifically references Exhibits 2F and 3F in his answer to one of several questions in the form interrogatory (R. 681), despite directives in multiple interrogatories that Dr. Davis support his responses with citation to "specific evidence." However, to the extent Smith interprets this to mean Dr. Davis only reviewed Exhibits 2F and 3F before rendering his opinion, this contention is speculative at best and is not bolstered by the record. By letter dated July 20, 2016, the ALJ requested that Dr. Davis provide an interrogatory opinion, with the request stating that it included a compact disc "with exhibits selected for inclusion in the record of this case and includes a list of this evidence for [his] reference." (R. 670). Dr. Davis rendered his opinion on August 2, 2016 (R. 686), answering "yes" to the interrogatory asking if he had "reviewed the evidence…furnished to" him. (R. 681).

At the time the ALJ requested Dr. Davis's opinion, the only medical evidence that was not in the record were the treatment notes found at Exhibit 11F, which state that they were printed on August 26, 2016. (R. 690 – 702). While Dr. Davis, therefore could not have taken into consideration the evidence at Exhibit 11F at the time he gave his opinion, the ALJ, who did consider Exhibit 11F along with the other evidence of record, found Dr. Davis's opinion to be "consistent with the record as a whole[,]" a consideration that is relevant to weighing any medical opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

error in her consideration of the medical opinion evidence of record, the Court **OVERRULES** those claims of error. There being no other claims of error raised, the Court finds that the Commissioner's final decision denying Smith benefits is therefore due to be **AFFIRMED**.

## V.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Smith's October 22, 2014 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of October 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**